```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
                                    :
UNITED STATES OF AMERICA            :
                                    :
            - v. -                  :      INDICTMENT
                                    :      S1 07 Cr. 511 (GEL)
SALVATORE MOLINA,                   :
TONY DUH, and                       :
LINDA DUH,                          :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -X
```



## COUNT ONE

(Conspiracy to Commit Money Laundering)

The Grand Jury charges:

**Colombian Money Laundering and the Black Market Peso Exchange**

1. Colombia is one of the world's primary sources of illegal narcotics. Each year Colombian narcotics traffickers generate billions of dollars of narcotics proceeds. In the United States, these narcotics are sold for dollars, almost always in cash, and often in small denominations

2. To profit effectively from this illegal activity, Colombian narcotics traffickers must find a way to "launder" these vast sums of cash, that is, to have the funds transferred to a place and in a form that the narcotics traffickers can use them and in a manner that avoids detection by law enforcement

3. Banking laws in the United States, Colombia, and elswhere prevent narcotics traffickers from simply depositing drug monies into accounts in the United States and transferring them to Colombia or other third countries. As a result,

narcotics traffickers must disguise, or "launder," the funds in order to hide their true source

4. The Colombian Black Market Peso Exchange (the "BMPE") is one of the primary methods used by Colombian narcotics traffickers to launder their narcotics proceeds. The basic BMPE scheme typically operates as follows. In Colombia, a narcotics trafficker owning narcotics proceeds generated in the United States and elsewhere outside of Colombia contacts a third party -- generally referred to as a "peso broker" -- who agrees to exchange Colombian pesos he controls in Colombia for the cash narcotics proceeds in the United States and elsewhere outside of Colombia. Once this exchange occurs, the narcotics trafficker, having received Colombian pesos in Colombia from the peso broker, has effectively laundered his money and is out of the BMPE process. The peso broker, on the other hand, must now do something with the drug dollars that he has acquired outside of Colombia so that he can obtain more pesos to begin the BMPE process again.

5. To do so, the peso broker uses contacts in the United States and elsewhere outside of Colombia to receive the narcotics trafficker's drug proceeds he purchased, often arranging for criminal associates to receive the drug proceeds in suitcases or bags on the street from the narcotics trafficker's operatives who control the money. After the money is physically

transferred, the peso broker uses additional contacts in the United States to get the drug proceeds into the United States banking systems. To avoid detection, this is often done either through deposits into bank accounts in company or individual names that are intended to appear to be related to legitimate business activity or through multiple deposits of small amounts of drug proceeds into different bank accounts which are then consolidated into larger accounts both in the United States and elsewhere outside of Colombia. The peso broker, still operating in Colombia, now has a pool of narcotics-derived proceeds in the United States or elsewhere outside of Colombia to sell to individuals or companies in Colombia and elsewhere who desire United States dollars.

6. Persons in Colombia, either individuals or companies, who have pesos to sell -- whether from legitimate sources or not -- and who want to exchange Colombian pesos for United States dollars at a favorable exchange rate and in a manner that avoids United States and Colombian currency exchange and income reporting requirements, then purchase the drug dollars from the peso broker. These Colombian dollar purchasers often use the drug dollars to purchase goods that are imported into Colombia for resale. Once the transaction is completed, the peso broker then uses his contacts in the United States and elsewhere outside of Colombia to transfer the drug proceeds he has

accumulated from the narcotics trafficker to wherever the dollar purchaser asks them to be transferred. Therefore, under the BMPE system, the drug proceeds can and often do end up in the accounts of individuals or companies who appear to have no direct involvement in narcotics-trafficking crimes

       7.    In practice, the BMPE process often involves more than one peso broker: in many instances, one broker has the direct relationship with the narcotics trafficker in Colombia and bears ultimate responsibility for the laundering of the drug money; a second broker has the criminal associates in the United States and elsewhere outside of Colombia who can collect and accumulate the narcotics proceeds; and a third broker has the contacts with Colombian individuals and companies who want to sell pesos for dollars to import goods into Colombia while avoiding United States and Colombian currency exchange and income reporting requirements. Irrespective of the number of intermediaries involved, however, the result of the BMPE process is the same: Colombian pesos in Colombia are used to buy United States drug dollars in the United States and elsewhere outside of Colombia.

       8.    All three key parties involved in the BMPE process benefit: (a) the narcotics trafficker receives laundered Colombian pesos; (b) the dollar purchaser acquires cheap United States dollars used to purchase goods to be imported into

Colombia for resale while evading currency exchange and income reporting requirements in the United States and Colombia; and (c) the peso broker makes a profit from the difference in the exchange rates he uses to purchase and sell the drug dollars during the unofficial currency exchange process.  Meanwhile, the BMPE process frustrates the efforts of the United States, Colombia, and other governments around the world to enforce their currency exchange and income reporting requirements, to collect taxes, tariffs, and duties owed to them, and to maintain the integrity of their financial institutions.

9.   Often, Colombian narcotics traffickers utilize currency exchanges, money remitters, and entities within the United States which deal with large quantities of cash.  These entities serve a crucial role in BMPE money laundering transactions as they are able to utilize a network of individuals and companies around the world looking to buy dollars (regardless of their source).

### The Money Laundering Conspiracy

10.  From at least in or about 1999, through and including June 2007, in the Southern District of New York and elsewhere, SALVATORE MOLINA, TONY DUH and LINDA DUH, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree

5

together and with each other to violate Section 1956(a)(1)(B)(i) of Title 18, United States Code.

11.   It was a part and an object of the conspiracy that SALVATORE MOLINA, TONY DUH and LINDA DUH, the defendants, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, the transfers of hundreds of thousands of dollars in cash, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, narcotics trafficking, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I).

**Means and Methods of the Conspiracy**

12.   Among the means and methods by which SALVATORE MOLINA, TONY DUH and LINDA DUH, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a.   TONY DUH is the owner and manager of, and personally operates, "Fine Accessories Plus, Inc.," an entity

6

incorporated under the laws of the State of New York, which is located at 22 West 30th Street, New York, New York 10001, in the vicinity of Fifth Avenue and Broadway ("Fine Accessories").

      b.    LINDA DUH is the president of, and personally operates, "Fine Accessories."

      c.    SALVATORE MOLINA is an individual who, on at least the occasions described herein, delivered the proceeds of narcotics trafficking to "Fine Accessories," so that the narcotics proceeds could be laundered.

      d.    For all relevant times of this indictment, TONY DUH and LINDA DUH utilized "Fine Accessories," to accept and transfer, for a fee, the proceeds of narcotics transactions in order to launder such proceeds; in particular TONY DUH and LINDA DUH work directly with several Colombian-based narcotics trafficking organizations.

      e.    The Colombian-based narcotics trafficking organizations would transport narcotics proceeds to "Fine Accessories," in New York, New York, and elsewhere, often in the form of bulk cash deliveries. Upon receipt of the narcotics trafficking proceeds, TONY DUH and LINDA DUH, would count the money and wire transfer the money out to various entities interested in buying large quantities of cash regardless of its source.

## Overt Acts

13.  In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York:

   a.  On or about September 8, 2006, SALVATORE MOLINA, the defendant, delivered narcotics proceeds to Fine Accessories.

   b.  TONY DUH and LINDA DUH, the defendants, possessed the narcotics proceeds in New York, New York, and laundered them.

   c.  On or about September 15, 2006, SALVATORE MOLINA, the defendant, attempted to deliver narcotics proceeds to a Fine Accessories.

(Title 18, United States Code, Section 1956(h).)

## Forfeiture Allegation

4.  As a result of the money laundering offense in violation of Title 18, United States Code, Section 1956, alleged in Count One of this Indictment, SALVATORE MOLINA, TONY DUH and LINDA DUH, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offense and all property traceable to such property, including, but not limited to, the following:

   a.  A sum of money equal to $25,000,000 in United

States currency, representing the amount of proceeds laundered as a result of the offenses described in Count One of this Indictment.

  b. All United States currency funds or other monetary instruments credited to account numbers 0651001939; 655910206; 81004319; 61001939; 10024701, and 65002288 in the name of "Fine Accessories Plus Inc. d/b/a Real Style Accessories", located at Cathay Bank, 235 Fifth Avenue, New York, New York, 10016.

  c. All United States currency funds or other monetary instruments credited to account numbers 8917888094; 0109108638, and 0109108646, in the names of TONY DUH and LINDA DUH, located at Commerce Bank, 11000 Atrium Way, Mount Laurel, NJ 09054.

  d. All United States currency funds or other monetary instruments credited to account numbers 907-1576264-65 and 907-1576264-01, in the name of LINDA DUH, as well as certificate of deposit number 1000070955029 in the name of LINDA DUH, located at J.P. Morgan Chase Bank in New York, New York.

  e. All United States currency funds or other monetary instruments credited to account numbers 3608719; 3701034; 3212735; 3401668; 3212180; 3207222; 3608189; 3608155; 3214079; 3214640; 3700671, and 3302213 in the names of "Fine Accessories Plus Inc. d/b/a Real Style Accessories" and "Sun Chain International Corp." located at Broadway National Bank, 250 Fifth Avenue, New York, New York.

  f. All United States currency funds or other monetary

instruments credited to account numbers 10024701; 61001939; 65002288; 81004319 in the names of "Fine Accessories Plus Inc. d/b/a Real Style Accessories" and "Sun Chain International Corp." located at Great Eastern Bank, New York, New York.

    g.    All United States currency, seized on or about September 15, 2007, from SALVATORE MOLINA, the defendant, in the vicinity of 22 West 30th Street, New York, New York, which includes approximately $149,846.00.

    h.    All United States currency, seized on or about June 23, 2007, from within the premises located at 22 West 30th Street, New York, New York, which includes approximately $500,000.

    i.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 22 West 30th Street, New York, New York, more particularly described as Block 831, Lot 52.

    j.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 220-02 46th Avenue, Bayside, New York, more particularly described as Section 33, Block 7482, Lot 148.

    k.    One 2003 Mercedes Benz E320, bearing vehicle identification number WDBUF65J63A85790.

### Substitute Asset Provision

    5.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (1) cannot be located upon the exercise of due diligence;

      (2) has been transferred or sold to, or deposited with, a third person;

      (3) has been placed beyond the jurisdiction of the Court;

      (4) has been substantially diminished in value; or

      (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

    (Title 18, United States Code, Sections 982 and 1956.)

_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**SALVADOR MOLINA,
TONY DUH, and
LINDA DUH,**

Defendants.

---

**INDICTMENT**

S1 07 Cr. 511 (GEL)

(Title 18, United States Code,
Section 1956(h).)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_/s/ Foreperson._

---

6/28/07 Superceding Indictment filed. RD.